IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEFFREY L. ACHESON<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JOSEPH FLEMING, Correctional Officers, individually and in his official capacity; IDAHO DEPARTMENT OF CORRECTION; CORIZON, (formerly Corizon Health, Inc., a Delaware Corporation),<br><br>　　　　Defendants. | Case No. 3:16-CV-391-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to dismiss and/or for summary judgment filed by defendant Fleming. The motion is fully briefed and at issue. For the reasons explained below, the Court will grant the motion.

## FACTUAL BACKGROUND

Plaintiff Acheson claims that defendant Fleming, a Correctional Officer employed by the Idaho Department of Corrections, rejected his pleas for medical treatment while he was suffering a heart attack, and that the delay in treatment caused substantial damage to his heart. Fleming responded by filing a motion to dismiss or for summary judgment arguing that Acheson failed to exhaust his administrative remedies and missed the deadline for filing his Notice of Tort Claim under the Idaho Tort Claims Act.

**Memorandum Decision & Order – page 1**

To determine the facts for the purpose of this motion, the Court has taken as true all the allegations set forth in Acheson's Complaint and Declaration, and has not examined any other extrinsic material. Nevertheless, because the Court has examined Acheson's Declaration, the motion to dismiss is converted into a motion for summary judgment. *See Albino v. Baca,* 747 F.3d 1162, 1166 (9th Cir. 2014) (discussing procedure for resolving failure-to-exhaust claims in PLRA litigation). There are no disputed issues of fact, at least pertaining to the Court's resolution of this motion, because the Court has taken as true all the allegations of Acheson's Complaint and Declaration.

On September 18, 2014, Acheson began experiencing severe chest pains that radiated down his left arm and up his left neck. His cellmate helped him to the medical unit where he told Correctional Officer Fleming about his nausea and pain, and requested immediate medical attention. Fleming told him that there was no medical staff available to see him because they were busy with another situation, and that he should return to his bunk and wait for the inmate count to take place. Acheson returned to his bunk but his condition worsened and he returned to plead with Fleming for help, but Fleming again told him to await the inmate count. Fleming told Acheson that he would personally contact medical staff after the count was finished.

Acheson was in "terrible pain" during the count and lost consciousness. He awoke the next morning – September 19, 2014 – "physically drained, exhausted, and very sore." *See Acheson Complaint (Dkt. No. 3)* at ¶ 17. For a third time, he asked Fleming to contact the medical staff, but Fleming told him the staff members were too busy to

examine him and that they did not "respond to their phones nor radio." *Id.* at ¶ 19. Fleming dismissed Acheson's complaints as being merely the flu. *Id.* at ¶ 20.

Later that same day, Acheson was finally examined by medical personnel who concluded that he had suffered a heart attack the previous night, September 18, 2014. A few days later, Acheson was troubled by "what I believed was medical's lack of response to defendant Fleming's call for medical assistance." *Acheson Declaration (Dkt. No. 20-2)* at ¶ 15. To investigate, he sought "information as to whether defendant Fleming had contacted them [Corizon] on September 18, 2014" by filing a concern form with Corizon on September 25, 2014, just six days after he learned that he had suffered a heart attack. Id. A Corizon nurse responded, telling Acheson that "medical had no way of tracking that information." *Id.* at ¶ 16.

It was not until July 28, 2015, that Acheson learned that Fleming had never made a call on September 18, 2014. Acheson had been complaining to another inmate about not getting a clear answer from Corizon, and was overheard by Corporal Cheryl Davis, who searched the prison's call logs and determined that Fleming had made no call. *Id.* at ¶ 20.

The next day, on July 29, 2015, Acheson filed a concern form with the Idaho Department of Corrections (IDOC) for Fleming's failure to contact the medical staff on September 18, 2014.[1] Acheson argues that "I could not file a grievance within 30 days of

---

[1] Fleming states in his briefing that the form was filed on July 28, 2015, *see Brief (Dkt. No. 19-2)* at pg. 6, but the form itself is dated July 29, 2015. *See Concern Form (Dkt. No. 19-5 – Exhibit D).*

my heart attack with Defendant Fleming because I did not have any conclusive information that Defendant Fleming had in fact failed to contact medical staff on September 18, 2014 for my immediate medical needs." *Id.* at ¶ 19. He goes on to argue that "[u]ntil Corporal Davis told me that Defendant Fleming had never called medical on September 18, 2014 or September 19, 2014, I did not know that I had been wronged and that Defendant Fleming had, in fact, been negligent in his duties giving me claim to grieve against Defendant Fleming." *Id.* at ¶ 24.

Fleming originally filed suit against Fleming, Corizon, and the IDOC. His claims against Corizon and the IDOC were dismissed in an Initial Review Order. *See Initial Review Order (Dkt. No. 9).* That same Order allowed the action to proceed against Fleming on the federal claim of deliberate indifference and on the state claim of gross negligence. *Id.*

Fleming has filed a motion to dismiss arguing that Acheson failed to exhaust his administrative remedies and failed to file a Notice of Tort Claim within the time frame required by the Idaho Tort Claims Act. As stated above, the Court will treat the motion as a motion for summary judgment with no disputed issues of fact. The Court will turn first to the exhaustion issue.

## ANALYSIS

### Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a).

**Memorandum Decision & Order – page 4**

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock,* 549 U.S. 199, 211 (2007). Exhaustion is intended to give "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.

A defendant bears the burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant does so, "the burden shifts to the plaintiff to show that the administrative remedies were unavailable." *Albino,* 697 F.3d at 1031. Confusing or contradictory information given to a prisoner "informs [the] determination of whether relief was, as a practical matter, 'available.'" *Brown*, 422 F.3d at 937. Administrative remedies are deemed unavailable if the prisoner shows the required procedural steps were "not known and unknowable with reasonable effort." *Albino*, 697 F.3d at 1037. It is not enough that the prisoner was subjectively unaware of the proper administrative procedures; exhaustion may be excused only if that lack of awareness was also "objectively reasonable." *Id*. at 1038.

The IDOC has set up a three-step process for an inmate to pursue a grievance concerning his treatment at the prison. The inmate must first file an Offender Concern Form (OCF). *See Reed Declaration (Dkt. No. 19-5)* at ¶ 5. If the inmate is not satisfied with the response – or does not receive any response within 7 days – the inmate may file a grievance form. *Id.* at ¶ 6. That grievance form is required to be filed within 30 days of the incident or problem that is the basis for the grievance. *Id.* at ¶ 7. If the inmate is not satisfied with the response to the grievance, he may file an appeal within 14 days. *Id.* ¶ 8.

Acheson failed to file a grievance within 30 days after learning on September 19, 2014, that he suffered a heart attack, and he has never filed any appeal. He argues that his failure to timely complete the administrative process should be excused because he did not realize until July 28, 2015, that Fleming never made the calls he promised to make to the medical staff. However, Acheson was certainly on inquiry notice on September 19, 2014, that he had a claim. By that date, Acheson's pleas for help had been rejected on three different occasions, even after Acheson had described to Fleming that he was suffering from the classic symptoms of a heart attack, symptoms that Fleming dismissed as the flu on one occasion. When Acheson was finally diagnosed as having suffered a heart attack, Acheson knew – or should have known – on that day that he had a claim for the delay in his medical treatment. This is apparent by the fact that just six days after learning he suffered a heart attack, Acheson states that he was troubled by "what I believed was medical's lack of response to defendant Fleming's call for medical assistance," and he filed a concern form with Corizon to get "information as to whether defendant Fleming had contacted them on September 18, 2014." *Id.* at ¶ 15.

Despite being on inquiry notice on September 19, 2014, that he was the victim of a delayed medical response, Acheson did not file a grievance within the 30-day deadline. A failure to file a timely grievance constitutes a failure to exhaust. *Woodford v. Ngo,* 548 U.S. 81, 91 (2006) (finding no exhaustion when an inmate failed to comply with 15-day grievance filing deadline because "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules").

Acheson's own uncertainty over who was at fault – Fleming, the medical staff, or both – did not prevent him from immediately filing a grievance.  A reasonable person would have filed a grievance against Fleming *and* the medical staff, and then sorted out the fault in the grievance process.  *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (holding that the "primary purpose" of the grievance is not to "contain every fact" or to "lay the groundwork for litigation" but instead to "alert the prison to a problem and facilitate its resolution").

Here, the administrative process was fully available to Acheson, and no conduct of the prison prevented him from complying with the 30-day deadline.  His failure to comply means he has not exhausted his administrative remedies and that his claims must be dismissed.

**Idaho Tort Claims Act**

Before bringing his tort claims against Fleming, Acheson was required by the Idaho Tort Claims Act to file a Notice of Tort Claim within 180 days from the date the claim arose or reasonably should have been discovered, whichever is later.  *See* Idaho Code § 6-906.  A failure to comply with this deadline bars a subsequent lawsuit based on those claims.  *Cobbley v. City of Challis,* 138 Idaho 154, 157 (2002).

The date when a cause of action accrues is a question of law to be determined by the Court where no disputed issues of material fact exist.  *Alpine Vill. Co. v. City of McCall*, 303 P.3d 617, 622 (Id. Sup. Ct. 2013).  The statutory period for filing a Tort Claim under the ITCA begins to run from the occurrence of the wrongful act even if the full extent of damages is not known at that time.  *Mitchell v. Bingham Mem'l Hosp*.,

**Memorandum Decision & Order – page 7**

942P.2d 544, 547 (1997). Knowledge of facts which would put a reasonably prudent person on inquiry is the equivalent to knowledge of the wrongful act and will start the running of the 180-day period. *Id*. As the court stated in *Mallory v. City of Montpelier*, 885 P.2d 1162 (Id. Ct. App. 1994), "[t]he statute does not begin running when a person fully understands the mechanism of the injury and the government's role, but rather when he or she is aware of such facts that would cause a reasonably prudent person to inquire further into the circumstances surrounding the incident."

From the discussion above, it is clear, as a matter of law, that Acheson was put on inquiry notice on September 19, 2014, of his claims against Fleming, and the 180-day period began to run on that date. Acheson did not file his Notice of Tort Claim until more than a year later in January of 2016. Therefore, his Notice was untimely and his claims must be dismissed.

## CONCLUSION

For all the reasons discussed above, the Court will treat the motion to dismiss or for summary judgment as a motion for summary judgment. Relying entirely on Acheson's Complaint and Declaration, and taking the allegations therein as true, the Court finds no disputed issues of fact. As a matter of law, Acheson has failed to exhaust his administrative remedies, and failed to timely file a Notice of Tort Claim. Thus, the Court will grant the motion for summary judgment. The Court will issue a separate Judgment as required by Rule 58(a).

## ORDER

In accordance with the Memorandum Decision set forth above,

**Memorandum Decision & Order – page 8**

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to dismiss and/or for summary judgment, treated as a motion for summary judgment, (docket no. 19) is GRANTED. The Clerk shall close this case.

DATED: January 25, 2018

B. Lynn Winmill
Chief U.S. District Court Judge